IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CARLA J. S.,[1] )
          Plaintiff, )
)
vs. ) Case No. 18-cv-02172-DGW[2]
)
COMMISSIONER of SOCIAL )
SECURITY, )
)
          Defendant. )

## **MEMORANDUM and ORDER**

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.[3]

## **Procedural History**

Plaintiff filed an application for both DIB and SSI in October 2015, alleging disability as of October 14, 2015. After holding an evidentiary hearing, the Administrative Law Judge (ALJ) denied both applications on January 29, 2018. (Tr.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) and Administrative Order No. 240. See, Docs. 10, 16.

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

17-27). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## **Issues Raised by Plaintiff**

Plaintiff raises the following point:

> The ALJ did not adhere to 20 C.F.R. § 416.927 when she failed to accord adequate weight to the opinion of plaintiff's treating physician, Dr. Cumberledge.

## **Applicable Legal Standards**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability. *Ibid.* The plaintiff bears the burden of proof at steps 1–4. *Ibid.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner

to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Ibid.*

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity

since the alleged onset date. The ALJ found that plaintiff had severe impairments of degenerative disc disease of the lumbar spine, cervical spondylosis, obesity, and ulcerative colitis.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the sedentary exertional level, limited to no climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, crouching, crawling, and kneeling; and occasional exposure to vibration and hazards. The ALJ stated that plaintiff should work in an environment in which a restroom is easily accessible. Based on the testimony of the VE, the ALJ concluded that plaintiff was unable to do her past relevant work, while also making an alternative finding that she was able to do other jobs at the sedentary exertional level which exist in significant numbers in the national economy.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1967 and was 48 years old on the alleged onset date. Her reported height was 5'9" and her reported weight was 210 pounds. (Tr. 66). Plaintiff submitted a function report in which she complained that she had difficulty performing tasks on the job because of her chronic back pain and needed frequent bathroom breaks because of her diagnosed ulcerative colitis. (Tr. 248). She stated that she alternated between sitting, standing, and laying down flat throughout the day.

She also claimed that she could not sleep for more than 2 to 3 hours at a time. (Tr. 249). Plaintiff admitted preparing simple meals, cleaning dishes, driving, and grocery shopping once a week for 2 hours. (Tr. 250-251).

## 2. Evidentiary Hearing

Plaintiff reported that she was 5'9" and weighed 218 pounds. She lived with her sister in a trailer. She babysat her grandchild three to four times a week. (Tr. 40).

Plaintiff last worked as a cashier at a convenience store. (Tr. 44). Plaintiff earned a high school diploma and attended some college. (Tr. 43). Plaintiff said that her current doctor was Dr. Turner. She also reported seeing a pain management specialist. (Tr. 58). On a typical day, plaintiff woke up around 9 am and stayed at home most of the day, alternating postural positions between sitting, standing, and laying down. (Tr. 59). Plaintiff stated she avoided going outside because of her pain, but did go to doctor's appointments and take care of other things outside of her home. (Tr. 52). Plaintiff reported using a cane prescribed by her doctor frequently. (Tr. 56). Plaintiff claimed that 5 to 6 days per month, her pain was so intense that it rendered her bed ridden. (Tr. 57).

Plaintiff stated that she cleaned dishes once or twice a week and cleaned the bathroom. (Tr. 52). She said she cooked twice per week. (Tr. 53). She admitted to driving twice per week. (Tr. 42).

A VE also testified. As there is no issue as to her testimony, it will not be summarized.

3. **Medical Records**

In January 2015, plaintiff visited the emergency room (ER) at St. Elizabeth's Hospital in Belleville, Illinois and complained of chronic lower back pain after running out of her hydrocodone prescription of 60 pills in 9 days. She described the pain as greater on her left side and radiating down her left leg. She tried taking her Norco, gabapentin, and tizanidine, but it did not help. (Tr. 379). Plaintiff was discharged without additional pain medication and instructed to follow-up with her doctor for further pain management. (Tr. 383). In April 2015, plaintiff returned to the ER at St. Elizabeth's and complained of abdominal pain. (Tr. 389). A CT scan of her abdomen and pelvis revealed, among other things, marked spurring of the sacroiliac (SI) joint, bilaterally. (Tr. 402).

In August 2015, plaintiff established care with Dr. Jon Cumberledge, a family medicine doctor. She complained of her ongoing problems with ulcerative colitis and chronic back pain. He prescribed Soma and ordered her to continue her other medications. (Tr. 451, 453).

In October 2015, plaintiff returned to the ER at St. Elizabeth's after feeling a pop followed by pain in her lower back. (Tr. 437). An x-ray of her lumbar spine showed moderate intervertebral disk space narrowing at L5-S1; milder disk height loss at most other levels; associated small endplate marginal osteophytes; facet joint hypertrophy and sclerosis; and mild degenerative changes in the SI joints. No acute fracture, subluxation, or compression deformities were found. (Tr. 442).

In November 2015, plaintiff saw Dr. Cumberledge and complained of significant worsening of her chronic back pain. He wrote that approximately 3 weeks before,

she had acute worsening of her back and left leg pain and she was unable to go to work. (Tr. 454). He observed plaintiff's gait was abnormal, and she ambulated with a cane. Plaintiff's straight-leg raise test was positive. (Tr. 456). He assessed plaintiff with lumbar degenerative disc disease, lumbar radiculopathy, and lower back pain. (Tr. 456). Later that month, Dr. Cumberledge completed a medical source statement where he found that plaintiff could lift and carry under 5 pounds; stand and walk a total of 4 hours in an 8-hour workday, 15 minutes at a time; and sit for 4 hours in an 8-hour workday, 15 minutes at a time. (Tr. 466-467). He also found that plaintiff could never perform any postural activities, while also completely restricting reaching, handling, or feeling. He further stated she could not get through an 8-hour workday with normal breaks without laying down during the work day. (Tr. 467). In September 2016 and October 2017, he confirmed his medical source statement findings. (Tr. 660, 676).

Plaintiff's gait fluctuated between normal and abnormal throughout her visits with Dr. Cumberledge, though, overall, her gait was classified as abnormal. (Tr. 453, 456, 481, 484, 498, 543, 548, 557, 560, 570, 575, 579). In February 2016, Dr. Cumberledge ordered a CT scan of plaintiff's abdomen and pelvis. (Tr. 496, 498). The results showed multilevel spondylosis with disk degeneration and narrowing at L5-S1. (Tr. 494-495). Plaintiff also reported to Dr. Cumberledge at this time that her pain medication provided good control of her back issues. (Tr. 496).

In December 2016, plaintiff began visiting the Associated Physicians Group (APG) for pain management. On examination, physician's assistant Christal Scott observed pain over the L1-L5 spinous process; SI joint; medial gluteus muscles; and

left and right greater trochanter. No muscle spasms were noted. (Tr. 592). There was limited range of motion with extension, flexion, left lateral bending, right lateral bending, left rotation, and right rotation. There was also a positive bilateral lumbar facet loading; positive bilateral straight-leg raise; positive bilateral anterior thigh thrust; positive bilateral sacral compression test; and positive bilateral FABER test. Scott diagnosed plaintiff with lower back pain and spondylolysis. (Tr. 594). At that time, plaintiff tested positive for marijuana in her urinalysis. (Tr. 596).

In January 2017, plaintiff followed up with Scott. Plaintiff stated that her pain was the same since her last visit, localized specifically to her lower back. Scott stated that plaintiff was currently taking Gabapentin, Soma, and Norco. Under the neurological category in range of symptoms, she noted that plaintiff was positive for paresthesia, weakness, difficulty walking. and confusion. (Tr. 599). Under the musculoskeletal category in exams, she remarked that plaintiff had a normal gait. (Tr. 600).

A March 2017 MRI of the lumbar spine revealed new right subarticular disk extrusion at L4-5 occupying the right lateral recess and potentially impinging the descending right L5 nerve root; no significant spinal canal stenosis; and foraminal narrowing at L5-S1. (Tr. 522). In April 2017, nurse practitioner Elsa Raymond at APG found pain over the lumbar spine and bilateral lumbar paraspinal muscles; limited range of motion with extension, flexion, bilateral bending and bilateral rotation. There was also a positive bilateral lumbar facet loading and positive bilateral straight-leg raise test. (Tr. 610, 611). Dr. Thomas Hodgkiss, the supervising physician at APG, administered a right L4-5 and L5-S1 lumbar

transforaminal epidural steroid injection, along with selective nerve root blocks to treat lumbar radiculopathy. (Tr. 612).

In May, June, July, and August 2017, nurse practitioners at APG examined plaintiff and found that her gait was antalgic with pain over the lumbar spine and bilateral lumbar paraspinal muscles. They noted limited range of motion with extension, flexion, bilateral bending and bilateral rotation. There was also a positive bilateral lumbar facet loading and positive bilateral straight-leg raise test. (Tr. 616, 620, 631, 635). In June, a nurse practitioner wrote an order for an SI joint belt for pain control, stabilization, and support of the pelvis along with a quad cane. (Tr. 623). In August, a nurse practitioner increased plaintiff's Norco prescription. (Tr. 633)

### 4. State Agency RFC Assessments

In May 2016, acting as a state agency consultant, Dr. Victoria Dow assessed plaintiff's RFC based on a review of the file materials. She found that plaintiff's statements about her abilities were only partially credible and she could do work at the light exertional level. (Tr. 73-75). In July 2016, acting as a state agency consultant, Dr. Charles Kenney also assessed plaintiff's RFC based on a review of the file materials. Dr. Kenney largely agreed with Dr. Dow's findings. (Tr. 102-106).

## Analysis

Plaintiff argues that the ALJ did not adequately explain his rejection of Dr. Cumberledge's medical source statements in his written decision. A treating physician's opinion is entitled to "controlling weight" if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and if it is

consistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010). An ALJ who chooses to reject a treating physician's opinion must provide a good reason for the rejection. *Ibid.*

When an ALJ decides to favor another medical professional's opinion over that of a treating physician, the ALJ must provide an account of what weight the treating physician's opinion merits. 20 C.F.R. § 404.1527(c)(2)-(5); *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011). Specifically, the ALJ must evaluate the opinion in light of (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. *Ibid.* The ALJ's decision failed to meet these requirements for rejecting the opinion of plaintiff's treating physician.

In her decision, the ALJ gave partial weight to the medical source statements of Dr. Cumberledge, which called for greater restrictions than what the ALJ incorporated into her final RFC findings. (Tr. 22, 24). According to the ALJ, "these functional limitations [were] inconsistent with his fairly routine clinical findings and progress notes, which suggest improved pain with opioids, as well as the medical imaging reports showing mild to moderate abnormalities." (Tr. 25). The ALJ continued, "the claimant has received quite conservative treatment for pain, consistently (sic) mostly of just Norco and muscle relaxers with one round of injections. Moreover, Dr. Chapa observed that the claimant could ambulate normally without a cane." That is it. The ALJ never mentioned the length of the treatment

relationship and frequency of examination with Dr. Cumberledge, the nature and extent of the treatment relationship, or the degree to which the opinion was supported by medical signs and laboratory findings.

Furthermore, while the ALJ focused on Dr. Chapa's observation that plaintiff could ambulate normally without a cane, this does not undercut Dr. Cumberledge's opinion. He, along with other medical professionals, noticed varying degrees of ambulation throughout his notes, some normal, some abnormal. So, the fact that Dr. Chapa would observe normal gait in his one-time assessment of plaintiff does not actually paint the full picture of plaintiff's gait limitations, nor does it cast doubt on Dr. Cumberledge's opinion and warrant partial weight from the ALJ. In sum, the ALJ quite simply did not provide enough factual basis under the evaluation standards to reduce the weight of Dr. Cumberledge's opinion, including his medical source statements.

Moreover, it is true, as the Commissioner alludes to, that the ALJ need not discuss every one of the physicians' treatment notes to fulfill his obligation to bridge the evidence to his conclusion. Yet, the ALJ must discuss at least some of the notes in a logical and reasonable way that demonstrates how they support his analysis. In so doing, he cannot ignore lines of evidence contrary to his conclusion and that is what happened here. *Simila*, 573 F.3d at 513; *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ discussed positive treatment notes from Dr. Cumberledge in her decision, while omitting notes that detailed plaintiff's worsening pain.

The lack of evidentiary support in this case requires remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,'

a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

DATE: September 19, 2019.

*[signature: Donald Wilkerson]*

**DONALD G. WILKERSON**
**UNITED STATES MAGISTRATE JUDGE**